UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

KENUTE H. CAMPBELL,                              :

                              Plaintiff,         :              15 Civ. 2773 (AJP)

              -against-                          :              **OPINION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,                 :

                              Defendant.         :

                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

                Plaintiff Kenute H. Campbell, represented by counsel, brings this action pursuant to

§ 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the

Commissioner of Social Security denying him Disability Insurance Benefits ("DIB").  (Dkt. No. 1:

Compl.)  Presently before the Court are the parties' cross-motions for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 12: Campbell Notice of Mot.; Dkt. No. 15: Comm'r

Notice of Mot.)  The parties have consented to decision of the case by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 9.)

                For the reasons set forth below, the Commissioner's motion for judgment on the

pleadings (Dkt. No. 15) is <u>GRANTED</u> and Campbell's motion (Dkt. No. 12) is <u>DENIED</u>.

                                        <u>FACTS</u>

<u>Procedural Background</u>

                On July 24, 2012, Campbell applied for DIB, alleging disability since May 13, 2010.

(Dkt. No. 14: Administrative Record ("R.") 108-16.)  The Social Security Administration ("SSA")

denied Campbell's application on October 25, 2012.  (R. 57-62.)   On November 21, 2013, represented by counsel,  Campbell had a hearing before Administrative Law Judge ("ALJ") Vincent Cascio.  (R. 27-49.)  On January 29, 2014, ALJ Cascio issued a written decision finding Campbell not disabled.  (R. 8-24.)  ALJ Cascio's decision became the Commissioner's final decision when the Appeals Council denied review on March 25, 2015.  (R. 1-4.)

**Non-Medical Evidence and Testimony**

Campbell, born on July 7, 1965, was forty-four years old at the alleged May 13, 2010 onset of his disability.  (R. 110.)  He lives in a house in New City, New York with his three children, ages 10, 15 and 18.  (R. 36.)  His children do most of the cooking, cleaning and grocery shopping with his supervision.  (R. 36-37.)  Campbell is a high school graduate, can read and write in English, but knows little about how to use a computer besides checking his e-mail.  (R. 42.)  In his spare time, Campbell watches television, listens to Christian music and reads the Bible.  (R. 44.)  He attends church three days a week on Sundays, Tuesdays and Fridays.  (Id.)

Campbell worked for United Airlines as a lead ramp serviceman for twenty-four years, loading and unloading cargo from airplanes. (R. 32-33.) His job involved standing and lifting up to 70 pounds.  (R. 33.)  On May 13, 2010, he was knocked down by a baggage cart when a coworker drove away without clearance. (R. 32-34.) As a result, he injured his neck, shoulder, back and knees.  (R. 34.)  Campbell testified that the heaviest object he can pick up is a gallon of milk and that he avoids lifting anything heavier than fifteen pounds.  (R. 38.)  He sits for about twenty minutes at a time before moving around or standing up.  (R. 39-40.)  He testified that he can stand only for about four minutes before the pain starts and that he can walk less than a block before resting.  (R. 38-39.)

For pain relief, Campbell receives epidural injections in his knees and back (R. 34),

in addition to taking oxycodone, naproxen and ibuprofen (R. 40).  He testified that he takes oxycodone at least twice a week, and that it usually leaves him drowsy or "loopy."  (R. 40-41.) Campbell underwent surgery on both knees in early 2011.  (R. 34-35.)  His doctors also have discussed back surgery (R. 34) and knee replacement surgery (R. 40) with him, though Campbell has expressed hesitance about both (R. 34, 40).

**Medical Evidence Before the ALJ**

**Dr. Marc Berezin**

On June 17, 2010, Campbell began seeing Dr. Berezin, an orthopedic surgeon.  (R. 243.)  Campbell was diagnosed at this time with cervical strain, lumbar strain, right shoulder contusion and bilateral knee osteoarthritis.  (R. 243-44.) Dr. Berezin also administered an injection of Depo-Medrol[1/] to Campbell's left knee.  (R. 244.)  Dr. Berezin opined that Campbell was "unable to work."  (Id.)

Campbell visited Dr. Berezin six more times in 2010 with consistent complaints of right shoulder pain, bilateral knee pain and back pain.  (R. 243-50.)  Dr. Berezin administered additional injections of Depo-Medrol to Campbell's knees, back, or right shoulder on July 7, September 1, October 27 and December 1, 2010.  (R. 244, 245, 247, 249, 250.)  Dr. Berezin noted in every visit that Campbell was "unable to work."  (R. 244-50.)

In June, August and October 2010, Dr. Berezin referred Campbell for a magnetic resonance imaging ("MRI") of his lumbar spine, both knees, and right shoulder.  (R. 244, 247, 248.)

---

[1/]    "Depo-Medrol" is the trademark for methylprednisolone acetate, an anti-inflammatory and immunosuppressant administered by injection or topically.  Dorland's Illustrated Medical Dictionary at 492, 1154 (32 ed. 2012).

Campbell's lumbar spine MRI revealed multi-level spondylitic[2/] changes.  (R. 274.)  The MRIs of his right and left knee revealed "a torn meniscus, as well as degenerative changes."  (R. 249, 275-78.)  Campbell's right shoulder MRI revealed tendinitis.  (R. 279.)

On January 31, 2011, Dr. Berezin performed arthroscopic surgery on Campbell's left knee to repair the medial meniscus tear and chondromalacia.  (R. 264.)  In subsequent visits to Dr. Berezin, Campbell expressed that his left knee generally felt better.  (R. 253-56.)  However, Campbell visited Dr. Berezin with complaints of bilateral knee pain on August 5, 2011.  (R. 257.)  Dr. Berezin administered a viscosupplementation[3/] injection to Campbell's left knee on August 31, 2011.  (R. 261.)

On April 7, 2011, Dr. Berezin performed arthroscopic surgery on Campbell's right knee to repair the medial meniscus tear.  (R. 268.)  Unlike the improvement with his left knee, Campbell continued to complain of right knee pain.  (R. 256.)  Dr. Berezin administered a Depo-Medrol injection to Campbell's right knee on July 1, 2011 (id.) and a Euflexxa injection on August 5, 2011 (R. 257).

Between November 2011 and August 2012, Campbell visited Dr. Berezin six more times with complaints of bilateral knee pain and occasionally back pain.  (R. 291-97.)  Dr. Berezin recommended viscosupplementation injections and continued to note that Campbell was "unable to work at his job."  (R. 291-93.)

On May 29, 2013, Dr. Berezin examined Campbell for a workers' compensation

---

[2/]     "Spondylitis" is inflammation of the vertebrae.  Dorland's Illustrated Medical Dictionary at 1754.

[3/]     "Viscosupplementation" is the injection of hyaluronan into a joint to treat pain in osteoarthritis.  Dorland's Illustrated Medical Dictionary at 2066.

progress report.  (R. 334-38.)  Dr. Berezin diagnosed Campbell with "Osteoarthrosis Unspecified." (R. 335.)  Additionally, in the section of the progress report asking whether Campbell can return to work without limitations, return to work with limitations, or cannot return to work at all, Dr. Berezin indicated that Campbell cannot return to work at all because of "knee pain and low back pain." (R. 336.)

### Dr. Paul G. Jones

On September 16, 2010, Campbell was referred to Dr. Paul Jones, an orthopedic surgeon, for an independent orthopedic examination.  (R. 197.)  Between September 2010 and March 2012, Dr. Jones examined Campbell four times.  (R. 183-99.)  At the time of the first examination, Campbell had been going to physical therapy three times a week and taking Naproxen and Soma for his pain.  (R. 197.)  Dr. Jones diagnosed Campbell with "cervical and lumbar syndrome" and "possible internal derangement of the right shoulder and the right knee." (R. 198.) Dr. Jones found that Campbell could return to work with "restrictions against prolonged overhead work, bending, running, prolonged standing, squatting and excessive use of stairs and ladders." (R. 199.)

On November 29, 2010, Dr. Jones reviewed the MRIs of Campbell's knees and opined that "bilateral knee arthroscopy on a causally related basis is appropriate and should be authorized."  (R. 194.)

On May 12, 2011, Dr. Jones conducted another examination after Campbell's second knee arthroscopic surgery.  (R. 191-92.)  He noted that Campbell was "status post bilateral knee surgery" and undergoing pain management to his lower back.  (R. 192.)  Dr. Jones opined that Campbell could return to work with "restrictions against bending, running, squatting and excessive use of stairs and ladders." (R. 193.)  He additionally set Campbell's lifting limit at approximately

fifteen pounds on an occasional basis.  (Id.)

On September 29, 2011, Dr. Jones examined Campbell again.  (R. 187-90.)  At this time, Campbell had been undergoing physical therapy for his knees, receiving viscosupplementation injections to his knees and receiving injections for pain management to his back.  (R. 187.)  Dr. Jones' diagnosis was "that of status post knee surgery with degenerative changes noted . . . ."  (R. 188.)  He also noted a "lumbar syndrome" (id.) and that Campbell had lost some motion of his left knee (R. 189).  Dr. Jones opined that Campbell could work with restrictions against bending, running, squatting and excessive use of stairs and ladders and occasional lifting of no more than fifteen pounds.  (Id.)

On March 29, 2012, Dr. Jones examined Campbell for the fourth time, diagnosing symptomatic osteoarthritis of both knees post surgery, as well as a lumbar syndrome.  (R. 184-86.)  Dr. Jones noted that Campbell's neck and shoulder problems had resolved.  (R. 185.)  Dr. Jones recommended that Campbell continue with his pain management injections.  (Id.)  He opined that Campbell could return to work with restrictions against running, squatting, bending, excessive use of stairs and ladders and lifting more than fifteen pounds.  (R. 186.)  After this visit, Dr. Jones submitted an addendum on April 2, 2012, stating that "there is clear evidence of permanency as [Campbell] has had bilateral knee surgery and spinal issues, which continue."  (R. 183.)

**Dr. Jeffrey C. Ritholtz**

On September 21, 2010, Campbell's insurance carrier referred him to Dr. Jeffrey Ritholtz for an independent chiropractic evaluation.  (R. 224-28.)  Dr. Ritholtz reviewed Campbell's medical history and records, and conducted a physical examination.  (R. 225-26.)  He diagnosed Campbell with cervical, thoracic and lumbar sprain.  (R. 228.)  Dr. Ritholtz did not recommend any chiropractic care and opined that Campbell may return to work full-time with no restrictions.  (Id.)

**Dr. Amy M. Weiss-Citrome**

On October 14, 2010, Campbell visited Dr. Amy Weiss-Citrome for an independent physical medicine and rehabilitation evaluation.  (R. 219-22.)  Campbell was attending physical therapy, chiropractic treatment and acupuncture multiple times a week, as well as receiving bilateral knee steroid injections.  (R. 219-20.)  After reviewing his records and conducting a physical examination, Dr. Weiss-Citrome diagnosed Campbell with cervical and lumbar strain, bilateral knee contusion and osteoarthritis, and right shoulder tendinitis.  (R. 222.)  She opined that Campbell can perform "light duty" work with no lifting over twenty pounds, and recommended continued physical therapy and medication.  (Id.)

**Dr. Jose Corvalan**

On October 5, 2012, Campbell visited Dr. Jose Corvalan, a consultative examiner, for an independent orthopedic examination at the request of the Division of Disability Determination.  (R. 300-02.)  Campbell disclosed to Dr. Corvalan that he cooks three to five times a week, cleans the house as best he can and spends most of his day caring for his children.  (R. 301.)  After a physical examination (R. 301-02), Dr. Corvalan diagnosed Campbell with low back and bilateral knee pain (R. 302).  He opined that Campbell has "moderate limitations for sitting, standing for long periods of time, walking long distance, bending, squatting, climbing stairs, lifting any heavy objects or kneeling . . . due to low back pain and bilateral knee pain."  (R. 302-03.)

**Dr. Robert Simon**

On January 4, 2013, Dr. Robert Simon, a physical medicine and rehabilitation specialist, conducted an independent medical examination of Campbell.  (R. 312-18.)  Campbell's physical therapy treatment had been discontinued and he had been using a back brace once a week.  (R. 312.)  After reviewing Campbell's records and conducting a physical examination, Dr. Simon

diagnosed him with lumbar and bilateral knee sprain, both of which were resolving.  (R. 314-15.)

Dr. Simon also opined that Campbell may participate in activities but with restrictions against heavy

lifting and prolonged sitting and standing.  (R. 315.)

**Dr. Jose Ruiz**

On March 13, 2013, Dr. Jose Ruiz, an orthopedic specialist, conducted a case

analysis, which did not involve a physical examination.  (R. 321.)  Based on Campbell's medical

records and prior evaluations from Drs. Jones, Corvalan and Simon, Dr. Ruiz found that Campbell

had severe bilateral knee degenerative joint disease, lumbar spine degenerative disc disease and

obesity, though not of listing level.  (Id.)  He also found that Campbell's cervical spine and right

shoulder issues had been resolved.  (Id.)

Dr. Ruiz also completed a residual functional capacity ("RFC") assessment.  (R. 322-

29.)  He opined that Campbell would be able to occasionally lift twenty pounds, frequently lift ten

pounds, stand or walk for four hours of an eight-hour workday and sit for six hours of an eight-hour

workday.  (R. 323.)  Dr. Ruiz also opined that Campbell could occasionally climb stairs, stoop and

kneel and could never climb or crawl.  (R. 324.)  Dr. Ruiz concluded from Campbell's statements

to Dr. Simon in January 2013 that he "retains reasonable functionality."  (R. 327.)  With regards to

treating and examining source conclusions, Dr. Ruiz referred to the most recent March 2012 IME.

(R. 328.)  Dr. Ruiz noted that Dr. Simon's January 2013 quantitative restrictions were consistent and

that Dr. Simon's qualitative restrictions were not inconsistent with the proposed RFC.  (Id.)

**Dr. Annarose Polifrone**

After ALJ Cascio's decision, on September 17, 2014, Campbell visited Dr. Polifrone

for an initial physiatric consultation.  (R. 341-45.)  Dr. Polifrone reviewed Campbell's medical

records and conducted a physical examination.  (R. 342-43.)  She noted that Campbell was limping,

used a cane for ambulatory assistance and needed help on and off the operating table.  (R. 343.)  Dr. Polifrone diagnosed Campbell with cervical sprain, LS injury with HNP L5-S1, right middle lumbar radiculopathy, internal derangement of both knees and right shoulder and bursitis of the right hip. (R. 344.)  Additionally, Dr. Polifrone noted that Campbell was on pain management medication that causes drowsiness, and that his prognosis was "guarded/poor."  (Id.)

**ALJ Cascio's Decision**

On January 29, 2014, ALJ Cascio denied Campbell's application for benefits.  (R. 8-24.)  ALJ Cascio applied the appropriate five-step legal analysis.  (R. 12-13.)  First, ALJ Cascio found that Campbell "ha[d] not engaged in substantial gainful activity since May 13, 2010, the alleged onset date."  (R. 13.)

At the second step, ALJ Cascio found that Campbell had the following severe impairments: status post right and left knee arthroscopy, bilateral degenerative joint disease of the knees, degenerative spondylosis at L3-L4 and L4-L5 and degenerative disc disease at L3-L4 and obesity.  (Id.)

At the third step, ALJ Cascio found that Campbell did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (R. 13-14.)  ALJ Cascio determined that Campbell had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift no more than twenty pounds occasionally, ten pounds frequently, and can walk four hours in an eight-hour workday with customary breaks.  Additionally, he can occasionally climb ramps/stairs, stoop, kneel, and crouch, frequently balance, but can never crawl or climb ropes/ladders and scaffolds.  Lastly, [Campbell] can only have occasional exposure to hazardous machines and unprotected heights.

(R. 14.)

In making this determination, ALJ Cascio considered Campbell's medical records

from Dr. Berezin.  (R. 15, 19-20.)  ALJ Cascio gave little weight to Dr. Berezin's opinions because they were "made for worker's compensation purposes, which does not relate to the residual functional capacity assessment in this decision.  A worker's compensation decision is based on different guidelines than that of the Social Security Administration.  Moreover, a determination of disability is a decision that is reserved for the Commissioner."  (R. 19-20.)  ALJ Cascio noted that Dr. Berezin's records show Campbell's knee issues improved after arthroscopic surgery.  (R. 15.)

ALJ Cascio gave significant weight to Dr. Jones' opinion that discussed Campbell's ability to work with restrictions, because "it was consistent with the residual functional capacity given and was corroborated by other examining doctors in the medical record."  (R. 17.)  ALJ Cascio gave little to no weight to Dr. Ritholtz's opinion because, as a chiropractor, he is a "health provider who is not considered to be an acceptable medical source."  (R. 16.)  ALJ Cascio gave some weight to Dr. Weiss-Citrome's opinion because "it was generally consistent with the claimant's sedentary residual functional capacity."  (Id.)  ALJ Cascio gave great weight to Dr. Corvalan's opinion because Dr. Corvalan had personally examined Campbell, and his assessment "greatly supports this decision's residual functional capacity."  (R. 19.)  ALJ Cascio gave only some weight to Dr. Simon's opinion because it was conducted under worker's compensation guidelines.  (Id.)  ALJ Cascio gave great weight to Dr. Ruiz's opinion because it "is greatly supported by the overall medical evidence and is largely consistent with the opinions of the other examining doctors who similarly found that the claimant had severe impairments, but not to the extent that it would preclude all work activities."  (R. 18.)

ALJ Cascio gave no weight to Dr. Berezin's, Dr. Jones' and Dr. Weiss-Citrome's opinions on Campbell's degree of disability because the determination of disability is a decision reserved for the Commissioner.  (R. 16, 17, 20.)

ALJ Cascio also concluded that Campbell's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 18.) The ALJ found Campbell's activities of daily living to be inconsistent with his alleged disabling symptoms, and also cited the discrepancy between Campbell's description of his daily activities given at the hearing and the description Campbell gave to Dr. Corvalan. (R. 19.) ALJ Cascio also noted that Campbell "was offered back surgery, but he declined, which may indicate that the pain was not as severe as he alleged." (Id.)

At the fourth step, ALJ Cascio determined that Campbell was unable to perform any past relevant work, since his past work required medium to heavy physical exertion. (R. 20.)

At the fifth step, ALJ Cascio considered Campbell's "age, education, work experience and residual functional capacity" and determined that there are jobs that exist in significant numbers in the national economy that Campbell can perform. (Id.) ALJ Cascio noted that, although Campbell did not have the RFC to perform the full range of sedentary work, those "additional limitations have little or no effect on the occupational base of unskilled sedentary work." (R. 21.) The ALJ relied on SSR 96-9p which states that "restrictions related to climbing ladders, ropes or scaffolds, balancing, kneeling, crouching or crawling would not usually erode the occupational base for a full range of sedentary unskilled work significantly because those activities are not usually required in sedentary work." (Id.) Because ALJ Cascio found minimal erosion of the sedentary occupational base, he adopted the finding directed by the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. (R. 20-21.)

Accordingly, ALJ Cascio concluded that Campbell had not been under a disability, as defined by the Social Security Act, from May 13, 2010 through the date of the decision. (R. 21.)

## ANALYSIS

## I.    THE APPLICABLE LAW

### A.    Definition Of Disability

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see, e.g., Barnhart v. Thomas, 540 U.S. 20, 23, 124 S. Ct. 376, 379 (2003); Barnhart v. Walton, 535 U.S. 212, 214, 122 S. Ct. 1265, 1268 (2002); Impala v. Astrue, 477 F. App'x 856, 857 (2d Cir. 2012).[4/]

> An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see, e.g., Barnhart v. Thomas, 540 U.S. at 23, 124 S.

---

[4/]    See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Surgeon v. Comm'r of Soc. Sec., 190 F. App'x 37, 39 (2d Cir. 2006); Rodriguez v. Barnhart, 163 F. App'x 15, 16 (2d Cir. 2005); Malone v. Barnhart, 132 F. App'x 940, 941 (2d Cir. 2005); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

Ct. at 379; Barnhart v. Walton, 535 U.S. at 218, 122 S. Ct. at 1270.[5/]

 In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).[6/]

**B.** **Standard Of Review**

 A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record as a whole to support such determination. E.g., 42 U.S.C. § 405(g); Giunta v. Comm'r of Soc. Sec., 440 F. App'x 53, 53 (2d Cir. 2011).[7/]  "'Thus, the role of the district court is quite limited and substantial deference is to be afforded to the Commissioner's decision.'" Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y.

---

[5/] See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x at 111; Betances v. Comm'r of Soc. Sec., 206 F. App'x at 26; Butts v. Barnhart, 388 F.3d at 383; Draegert v. Barnhart, 311 F.3d at 472; Shaw v. Chater, 221 F.3d at 131-32; Rosa v. Callahan, 168 F.3d at 77; Balsamo v. Chater, 142 F.3d at 79.

[6/] See, e.g., Brunson v. Callahan, No. 98-6229, 199 F.3d 1321 (table), 1999 WL 1012761 at *1 (2d Cir. Oct. 14, 1999); Brown v. Apfel, 174 F.3d at 62.

[7/] See also, e.g., Prince v. Astrue, 514 F. App'x 18, 19 (2d Cir. 2013); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981 (2007); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983).

July 26, 2002) (Peck, M.J.).[8/]

      The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[9/] "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983).  The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[10/]

      The Court, however, will not defer to the Commissioner's determination if it is "'the product of legal error.'" E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012); Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

---

[8/]    See also, e.g., Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) (Chin, D.J.) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (quotations & alterations omitted)).

[9/]    See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

[10/]    See also, e.g., Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012); Veino v. Barnhart, 312 F.3d at 586.

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims.  20 C.F.R. §§ 404.1520, 416.920; see, e.g., Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003); Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291 (1987).  The Supreme Court has articulated the five steps as follows:

> Acting pursuant to its statutory rulemaking authority, the agency has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further.  [1] At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity."  [2] At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [3] At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [4] If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  [5] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. at 24-25, 124 S. Ct. at 379-80 (fns. & citations omitted).[11]

The claimant bears the burden of proof as to the first four steps; if the claimant meets the burden of proving that he cannot return to his past work, thereby establishing a prima facie case, the Commissioner then has the burden of proving the last step, that there is other work the claimant can perform considering not only his medical capacity but also his age, education and training.  See,

---

[11]     Accord, e.g., Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 774; see also, e.g., Jasinski v. Barnhart, 341 F.3d at 183-84; Shaw v. Chater, 221 F.3d at 132; Brown v. Apfel, 174 F.3d at 62; Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); Perez v. Chater, 77 F.3d at 46; Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

e.g., Barnhart v. Thomas, 540 U.S. at 25, 124 S. Ct. at 379-80.[12/]

C.      **The Treating Physician Rule**

The "treating physician's rule" is a series of regulations set forth by the Commissioner

in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion.

Specifically, the Commissioner's regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); see, e.g., Rugless v. Comm'r of Soc. Sec., 548 F. App'x 698, 699-700

(2d Cir. 2013); Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010); Colling v. Barnhart, 254

F. App'x 87, 89 (2d Cir. 2007); Lamorey v. Barnhart, 158 F. App'x 361, 362 (2d Cir. 2006).

Further, the regulations specify that when controlling weight is not given a treating

physician's opinion (because it is not "well-supported" by other medical evidence), the ALJ must

consider the following factors in determining the weight to be given such an opinion: (1) the length

of the treatment relationship and the frequency of examination; (2) the nature and extent of the

treatment relationship; (3) the evidence that supports the treating physician's report; (4) how

consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the

physician in contrast to the condition being treated; and (6) any other factors which may be

significant.  20 C.F.R. § 404.1527(c)(2)-(6); see, e.g., Cichocki v. Astrue, 534 F. App'x 71, 74 (2d

---

[12/]    See also, e.g., Selian v. Astrue, 708 F.3d at 418; Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Rosa v. Callahan, 168 F.3d at 80; Perez v. Chater, 77 F.3d at 46; Berry v. Schweiker, 675 F.2d at 467.

Cir. 2013); <u>Gunter</u> v. <u>Comm'r of Soc. Sec.</u>, 361 F. App'x 197, 197 (2d Cir. 2010).[13/]

When a treating physician provides a favorable report, the claimant "is entitled to an express recognition from the [ALJ or] Appeals Council of the existence of [the treating physician's] favorable . . . report and, if the [ALJ or] Council does not credit the findings of that report, to an explanation of why it does not."   <u>Snell</u> v. <u>Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999); <u>see</u>, <u>e.g.</u>, <u>Cichocki</u> v. <u>Astrue</u>, 534 F. App'x at 75; <u>Zabala</u> v. <u>Astrue</u>, 595 F.3d 402, 409 (2d Cir. 2010) (ALJ's failure to consider favorable treating physician evidence ordinarily requires remand pursuant to <u>Snell</u> but does not require remand where the report was "essentially duplicative of evidence considered by the ALJ"); <u>Ferraris</u> v. <u>Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence." (citations omitted)); <u>Ramos</u> v. <u>Barnhart</u>, 02 Civ. 3127, 2003 WL 21032012 at *7, *9 (S.D.N.Y. May 6, 2003) (The ALJ's "'failure to mention such [treating physician report] evidence and set forth the reasons for his conclusions with sufficient specificity hinders [this Court's] ability . . . to decide whether his determination is supported by substantial evidence.'").

The Commissioner's "treating physician" regulations were approved by the Second Circuit in <u>Schisler</u> v. <u>Sullivan</u>, 3 F.3d 563, 568 (2d Cir. 1993).

Despite the wide deference accorded to treating physicians' medical opinions, the ALJ may decline to give controlling weight to such opinions under certain circumstances.  An ALJ

---

[13/]   <u>See also</u>, <u>e.g.</u>, <u>Foxman</u> v. <u>Barnhart</u>, 157 F. App'x 344, 346-47 (2d Cir. 2005); <u>Halloran</u> v. <u>Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004); <u>Shaw</u> v. <u>Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000); <u>Clark</u> v. <u>Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998); <u>Schaal</u> v. <u>Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998).

is not compelled to afford controlling weight where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see also, e.g., Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion, . . . that opinion will not be deemed controlling.").  Moreover, a treating physician's opinions as to whether a claimant is disabled or unable to work are not controlling because such dispositive determinations are reserved to the Commissioner.   20 C.F.R. § 404.1527(d); see also, e.g., Snell v. Apfel, 177 F.3d at 133; SSR 96-5p, 1996 WL 374183 at *2 (S.S.A. July 2, 1996).  The SSA "considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability."  Snell v. Apfel, 177 F.3d at 133.

### D.    The ALJ's Duty To Develop The Record

It is the "well-established rule in [the Second] circuit" that the ALJ must develop the record:

> [I]t is the well-established rule in our circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks and brackets omitted) [, cert. denied, 559 U.S. 962, 130 S. Ct. 1503 (2010)]; accord Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004), [amended on other grounds], 416 F.3d 101 (2d Cir. 2005); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); see also Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 43 (2d Cir. 1972) (pro se claimant).  Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial." Butts, 388 F.3d at 386 (internal quotation marks omitted).  "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." Id. (internal quotation marks omitted); accord Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

Moran v. Astrue, 569 F.3d 108, 112-13 (2d Cir. 2009).

## II.     APPLICATION OF THE LEGAL STANDARD TO CAMPBELL'S CLAIM

### A.     ALJ Cascio Sufficiently Developed the Administrative Record

Although Campbell does not expressly allege that ALJ Cascio failed to develop the record, his brief references the ALJ's sua sponte duty to seek additional information from the treating physician.  (Dkt. No. 13: Campbell Br. at 4.)  Because legal error would warrant remand, Tejada v. Apfel, 167 F.3d 770, 773(2d Cir. 1999), the Court will first address the correctness of the legal standards applied.

"'[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a "complete medical history," the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (quoting Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996))).[14/]  Moreover, "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician." Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012).  If the evidence is consistent but insufficient to make a disability determination, the SSA may elect to resolve the insufficiency by requesting a consultative examination at its expense, instead of recontacting the treating physician. 20 C.F.R. § 404.1520b(c)(3).

ALJ Cascio's decision was based on the medical records and physical examinations

---

[14/]     See also, e.g., Ramos v. Comm'r of Soc. Sec., 13 Civ. 6561, 2015 WL 708546 at *18 (S.D.N.Y. Feb. 4, 2015) (ALJ had no further obligation to develop the record where the medical record from the treating clinic was "extensive, including more than two years of consistent treatment notes"); Matos v. Colvin, 13 Civ. 4525, 2014 WL 3746501 at *9 (S.D.N.Y. July 30, 2014) (ALJ properly fulfilled duty to develop the record where he questioned claimant thoroughly, solicited testimony from medical and vocational experts and admitted voluminous submissions from physicians), aff'd, 618 F. App'x 14 (2d Cir. 2015).

of Drs. Berezin, Jones, Weiss-Citrome, Corvalan and Simon, as well as Dr. Ruiz's review and assessment of the medical records.  (See pages 3-11 above.)  Dr. Berezin's reports closely track Campbell's progress from June 2010 through August 2012 (see pages 3-4 above), and the record also includes physical examinations from Dr. Berezin and Dr. Simon in 2013 (see pages 4-5, 7-8 above).  Additionally, although Dr. Berezin's reports do not opine on Campbell's functional capabilities, the opinions of Dr. Jones, Dr. Weiss-Citrome, Dr. Corvalan and Dr. Simon do report on Campbell's limitations and are based on both physical examination and review of Dr. Berezin's reports.  (See pages 5-8 above.)  Thus, to the extent that Campbell argues that Dr. Berezin's opinions were not accorded controlling weight due to an inadequately developed medical record, his argument is unavailing.

**B.     ALJ Cascio's Decision to Give Little Weight to Dr. Berezin's Opinions Did Not Constitute Reversible Error**

Campbell argues that ALJ Cascio failed to follow the treating physician rule by giving little –i.e., not controlling– weight to the medical opinions of Dr. Berezin, Campbell's treating physician.  (Dkt. No. 13: Campbell Br. at 2-3.)  Campbell claims that "[a]lthough a determination of disability is reserved for the Commissioner, [Dr. Berezin's] medical opinion is that the plaintiff is unable to do any work."  (Campbell Br. at 3.)

The treating physician rule applies to medical opinions that, pursuant to 20 C.F.R. § 404.1527(a)(2), must be a physician statement "that reflect[s] judgments about the nature and severity of [the claimant's] impairment(s) . . . ."  It is well established that a treating physician's conclusory statements that a claimant is disabled or unable to work are not entitled to "any special significance" in the ALJ's determination.  20 C.F.R. § 404.1527(d); see also, e.g., Bagley-Reed v. Colvin, 15 Civ. 3851, 2016 WL 2605201 at *6 (S.D.N.Y. May 3, 2016) (treating physician's

statement "that the plaintiff was 'totally disabled' was both vague and conclusory . . . meaning the ALJ must draw his own conclusions as to whether the data a claimant's physicians provide indicate disability"); Henry v. Colvin, 12 Civ. 6822, 2015 WL 9238959 at *10 (S.D.N.Y. Dec. 17, 2015); SSR 96-5p, 1996 WL 374183 at *3 (S.S.A. July 2, 1996); see also cases cited at pages 17-18 above.

      The record indicates that Dr. Berezin saw Campbell on at least twenty-four occasions over three years.  (See pages 3-5 above.)  Every medical record from Dr. Berezin proceeded in a similar fashion: an intake summary of Campbell's complaints, observational notes from the physical examination, a list of Dr. Berezin's impressions which were usually little more than "cervical and lumbar sprain," and a treatment plan that included either the phrase "unable to work" or "unable to work at his job."  (R. 243-61, 291-96; see pages 3-5 above.)  Dr. Berezin's statement that Campbell was "unable to work" – without any accompanying assessments of Campbell's functional limitations – is not entitled to treating physician deference because it is an opinion on an issue reserved for the Commissioner.  Compare, e.g., Bagley-Reed v. Colvin, 2016 WL 2605201 at*6 (declining to accord controlling weight to a treating physician's statement of "totally disabled" without additional function-by-function assessment of work-related activities), with Pines v. Comm'r of Soc. Sec., 13 Civ. 6850, 2015 WL 872105 at *9 (S.D.N.Y. Mar. 2, 2015) (following the treating physician rule where a treating physician indicated that the plaintiff, if employed, would be absent more than three times per month, in addition to a statement of "totally disabled"), R. & R. adopted, 2015 WL 1381524 (S.D.N.Y. Mar. 25, 2015).  Accordingly, ALJ Cascio did not commit reversible error by according little weight to Dr. Berezin's statements.

      Campbell also takes issue with ALJ Cascio's reasoning that Dr. Berezin's workers' compensation determination warrants little weight because it was based on different guidelines than those followed by the SSA.  (Campbell Br. at 2.)  Campbell argues that the phrase "total disability"

means an inability to do any work, regardless of the forum for which the medical report containing the phrase was prepared.  (Campbell Br. at 3.)  Campbell, however, does not cite any authority to support this claim.  To the contrary, the SSA's Policy Interpretation Ruling on other governmental disability determinations has established that, while such determinations may not be ignored, they are not binding on the SSA.  SSR 06-03p, 2006 WL 2329939 at *7 (Aug. 9, 2006).  As discussed above (see pages 20-21), Dr. Berezin's conclusory statements that Campbell is "unable to work" are not entitled to controlling weight, whether in the context of a workers' compensation determination or otherwise.

Campbell also presents Dr. Polifrone's assessment from September 14, 2014 as additional support for Dr. Berezin's opinions.  (Campbell Br. at 3.)  Although new and material evidence may be submitted to the Appeals Council subsequent to an ALJ decision, such evidence must "relate[] to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); see also, e.g., Cahill v. Colvin, 12 Civ. 9445, 2014 WL 7392895 at *31 (S.D.N.Y. Dec. 29, 2014).  Dr. Polifrone examined Campbell nearly eight months after ALJ Cascio's decision, and she did not expressly opine upon Campbell's condition during the disability period. (See pages 8-9 above.)  Furthermore, her assessment notes significantly more severe symptoms than those noted in any of the other medical reports during the disability period, including Dr. Berezin's records.  (See R. 341-42.)  Accordingly, the Appeals Council was not required to consider Dr. Polifrone's evaluation, as it did not relate to the period on or before ALJ Cascio's decision but rather to Campbell's purportedly more severe subsequent condition.   "[C]onditions that developed subsequent to the ALJ's denial of benefits are not relevant or material to the ALJ's determination." Bussi v. Barnhart, 01 Civ. 4330, 2003 WL 21283448 at *10 (S.D.N.Y. June 3, 2003) (Lynch, D.J.). Campbell, however, can reapply for Social Security benefits.  See, e.g., Delvalle v. Colvin, 14 Civ.

1779, 2015 WL 1381536 at *3 (S.D.N.Y. March 25, 2015) ("[B]ased on [plaintiff's] allegedly deteriorating condition, [she] is welcome to reapply for Social Security disability benefits."); Velasquez v. Barnhart, 03 Civ. 6448, 2004 WL 1752825 at *4 (S.D.N.Y. August 4, 2004).

In according Dr. Berezin's opinions little weight, ALJ Cascio correctly reasoned that conclusory statements regarding Campbell's ability to work – including those made for workers' compensation – are not entitled to treating physician deference.  Because Dr. Berezin's reports do not contain any other conflicting medical opinion recognizable under 20 C.F.R. § 404.1527(a)(2), ALJ Cascio did not violate the treating physician rule.

### C.    ALJ Cascio's Decision to Attribute Different Weight to Different Opinions from a Single Physician Is Supported By Substantial Evidence in the Record

Campbell argues that ALJ Cascio improperly "pick[ed] and cho[se] which part of Dr. Jones' report he is going to give weight to."  (Dkt. No. 13: Campbell Br. at 4-5.)  Campbell asserts that ALJ Cascio gave different weight to different sections of Dr. Jones' opinion, in particular giving little weight to the limitation against prolonged overhead work.  (Campbell Br. at 4-5, citing R. 17.) Additionally, Campbell claims ALJ Cascio's decision is inconsistent insofar as it accords great weight to Dr. Ruiz's opinion that generally approves of Dr. Jones' limitations but little weight to Dr. Jones' opinion itself.  (Campbell Br. at 6-7.)

The ALJ has a duty to consider and evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(b)-(c).  This means that the ALJ may not selectively ignore highly probative evidence without explanation.  Vazquez v. Comm'r of Soc. Sec., 14 Civ. 6900, 2015 WL 4562978 at *17 (S.D.N.Y. July 21, 2015).  Although the ALJ therefore cannot pick and choose which exhibits to consider, the ALJ must keep in mind that "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions . . . and that it may be

necessary to decide whether to adopt or not adopt each one." SSR 96-5p, 1996 WL 374183 at *4 (July 2, 1996); accord SSR 96-2p, 1996 WL 374188 at *2 (July 2, 1996) ("Adjudicators must use judgement based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source.").

ALJ Cascio gave little weight to Dr. Jones' limitation regarding prolonged overhead work "inasmuch as Dr. Jones did point out that claimant's neck and shoulder issues had been resolved." (R. 17.) Notably, Dr. Jones only proposed the overhead work limitation after Campbell's first visit in September 2010, while no such limitation appears in any of Dr. Jones' subsequent assessments. (See pages 5-6 above.) Furthermore, ALJ Cascio's inference that Campbell's neck and shoulder issues had improved is corroborated by Dr. Berezin's January 2011 report noting that Campbell's "right shoulder is feeling pretty good." (R. 251.) ALJ Cascio's decision to give little weight to the limitation against prolonged overhead work thus was supported by substantial evidence and was not the result of arbitrary "picking and choosing." Moreover, because Dr. Ruiz only commented on Dr. Jones' March 2012 evaluation, which did not mention an overhead work limitation, no inconsistency exists with respect to ALJ Cascio's decision to accord different weights to the corresponding sections of those doctors' opinions.

Campbell also argues that ALJ Cascio abused his discretion by giving great weight to Dr. Ruiz's medical opinion because Dr. Ruiz did not conduct a physical examination. (Campbell Br. at 6-7.) Campbell asserts that "the report should [have been] given no weight whatsoever." (Id.) Pursuant to 20 C.F.R. § 404.1527(e), non-examining sources must be considered as opinion evidence, which are subject to the same evaluation factors as other medical opinions. "While it is not legal error per se to assign greater weight to a non-treating physician than to a treating physician, such a decision must be based upon proper consideration of relevant factors and sufficiently

explained."  Mercado v. Colvin, 15 Civ. 2283, 2016 WL 3866587 at *20 (S.D.N.Y. July 13, 2016) (citation omitted).

ALJ Cascio accorded great weight to Dr. Ruiz's opinion because "his opinion is greatly supported by the overall medical evidence and is largely consistent with the opinions of the other examining doctors . . . ."  (R. 18.)  The Court is not convinced that ALJ Cascio adequately explained why he accorded great weight to Dr. Ruiz's opinion.  Nevertheless, Dr. Ruiz's medical opinion and proposed restrictions were not inconsistent with the other medical opinions in the record, with the exception of Dr. Berezin's immaterial statements that Campbell was "unable to work."  (See pages 3-11 above.)  ALJ Cascio's determination also is supported by the opinions of Dr. Jones and Dr. Corvalan, both of whom physically examined Campbell and reviewed Dr. Berezin's reports.  "[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration."  Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (alteration in original).  Accordingly, notwithstanding ALJ Cascio's insufficient explanation of the reason for the weight given to Dr. Ruiz's opinion, there is substantial evidence supporting ALJ Cacio's ultimate determination that Campbell was not disabled.

The Court notes one other point not raised by Campbell.  The Court in the past has criticized ALJ decisions that first state an RFC determination and then state that medical evidence is consistent with the ALJ's RFC determination, a way of reasoning that puts the cart before the horse.[15/]  The ALJ here did what the Court has criticized.  Nevertheless, substantial evidence

_____

[15/]     Similarly, this Court, and others, previously have criticized ALJ decisions that "[d]etermin[e] the RFC first and then measur[e] the claimant's credibility by that yardstick," as "illogical" and "prejudicial to the claimant."  Cruz v. Colvin, 12 Civ. 7346, 2013 WL 3333040 at *15-16 (S.D.N.Y. July 2, 2013) (Peck, M.J.) (& cases cited therein), R. & R. adopted, 2014 WL 774966 (S.D.N.Y. Feb. 21, 2014); see also, e.g., Hopkins v. Colvin, 13

(continued...)

26

supports the RFC determination, even if the ALJ reasoned backwards.

## CONCLUSION

        For the reasons set forth above, the Commissioner's determination that Campbell was not disabled within the meaning of the Social Security Act during the period from May 13, 2010 to January 29, 2014 is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is GRANTED and Campbell's motion for judgment on the pleadings (Dkt. No. 12) is DENIED. The Clerk of Court shall close the case.

        SO ORDERED.

Dated:      New York, New York
             November 1, 2016

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to:      All Counsel

---

15/   (...continued)
Civ. 4803, 2014 WL 2526837 at *18 n.17 (S.D.N.Y. June 5, 2014) (Peck, M.J.), R. & R. adopted, 2014 WL 4392209 (S.D.N.Y. Sept. 5, 2014); Givens v. Colvin, 13 Civ. 4763, 2014 WL 1394965 at *10 n.18 (S.D.N.Y. Apr. 11, 2014) (Peck, M.J.); Paulino v. Colvin, 13 Civ. 3718, 2014 WL 2120544 at *17 n.18 (S.D.N.Y. May 13, 2014) (Peck, M.J.). Nevertheless, while ALJ Cascio's language leaves something to be desired, here unlike in Cruz, he gave sufficient explanation for finding Campbell's claim of disability to lack credibility—including careful review of the contrary medical evidence and Campbell's testimony of his activities of daily living despite his impairments—such that the Court concludes the ALJ's finding is supported by substantial evidence and a remand is not called for. See, e.g., Hopkins v. Colvin, 2014 WL 2526837 at *18 n.17; Givens v. Colvin, 2014 WL 1394965 at *10 n.18; Paulino v. Colvin, 2014 WL 2120544 at *17 n.18.